FOGEL, LTD. A.T., Federal Group I, and International Property Management, Inc., Appellants,

v.

Janet SHOEMAKE, Individually and as Administratrix of the Estate of Miranda Gilley, Appellee.

No. 2–89–149–CV.

Court of Appeals of Texas, Fort Worth.

Sept. 4, 1990.

Rehearing Denied Oct. 9, 1990.

Cowles & Thompson, R. Brent Cooper, R. Michael Northrup, Dallas, for appellants.

Keith, Link & Smith, P.C., C. Denise Smith and Ken M. Link, Fort Worth, for appellee.

Before FARRIS, LATTIMORE and DAY, JJ.

## OPINION

DAY, Justice.

In this case of first impression, the issue before us is whether the doctrine of parental immunity prohibits a third party from seeking contribution from a negligent parent in a survival action brought by the child's estate.

Appellee, Janet Shoemake, is the mother of the deceased child, Miranda Gilley. As administratrix of the Estate of Miranda Gilley, appellee filed a survival action against appellants and was awarded damages. Appellants contend they are entitled to contribution from Janet Shoemake, individually, for the percentage of negligence assessed by the jury against her individually.

We hold that such contribution is available and is not prohibited by the doctrine of parental immunity. We reform the trial court's judgment so as to reflect that appellants are entitled to receive contribution from Janet Shoemake, individually, in the survival action for 45 percent of the total damages awarded to the Estate of Miranda Gilley. As reformed, we affirm the trial court's judgment.

This wrongful death and survival action arose out of the drowning death of twenty-three-month-old Miranda Gilley after she fell into a swimming pool located at the apartment complex in which she resided. The wrongful death action was instituted by her parents, Janet Shoemake and Wayne Gilley. The survival action was filed by Janet Shoemake, individually, as administratrix of the Estate of Miranda Gilley.[1]

---

1. Appellants do not appeal the trial court's damage award to Janet Shoemake in her wrongful death action nor her award as administratrix of the Estate of Miranda Gilley in the survival action. Appellants only complain of the trial court's refusal to grant them a credit against Janet Shoemake for her contributory negligence assessed by the jury in the survival action.

The jury awarded Janet Shoemake $285,-492.28 in her wrongful death claim, but refused to award damages to Wayne Gilley for his claim. The jury also awarded $50,-969 to the Estate of Miranda Gilley in the survival action. In its verdict, the jury assessed negligence against the parties in the following percentages: apartment complex owners Fogel, Ltd. A.T. and Federal Group I, 5 percent each; apartment complex manager, International Property Management, Inc., 45 percent; and Janet Shoemake, 45 percent. In the wrongful death claim, the trial court subsequently reduced the damages awarded to Shoemake by 45 percent, and allowed her a recovery of $157,020.75 plus pre-judgment interest. Appellants filed a motion to amend the judgment in the survival action, requesting a credit against Janet Shoemake for 45 percent of the amount awarded to the Estate of Miranda Gilley. This motion was denied by the trial court, and judgment was entered against appellants on the verdict and for pre-judgment interest, totaling $186,910.32 to Janet Shoemake, and $66,-336.70 to the Estate of Miranda Gilley.

In their sole point of error, appellants assert the trial court erred in failing to grant them contribution against Janet Shoemake, individually, for the percent of damages to the Estate of Miranda Gilley found by the jury to have been caused by the negligence of Janet Shoemake. Appellants argue they properly pled their claim for contribution and obtained a finding from the jury in support of this contribution claim in accordance with TEX.CIV. PRAC. & REM.CODE ANN. sec. 33.012 (Vernon 1986). They argue that under the provisions of TEX.CIV.PRAC. & REM. CODE ANN. sec. 33.016 (Vernon 1986), they are entitled to a credit against Janet Shoemake for $29,851.52, which represents 45 percent of the $66,336.70 in damages awarded to the Estate of Miranda Gilley.

Shoemake maintains that since under the doctrine of parental immunity, Miranda would have no cause of action against Shoemake, the appellants likewise have no right of recovery against Shoemake, citing us to *Jilani By and Through Jilani v. Jilani*, 767 S.W.2d 671 (Tex.1988), *Felder-*

*hoff v. Felderhoff*, 473 S.W.2d 928 (Tex. 1971), and *City of Houston v. Watson*, 376 S.W.2d 23 (Tex.Civ.App.—Houston 1964, writ ref'd n.r.e.). Shoemake argues that because a child has no cause of action against a parent for injuries arising out of deficient supervision, a defendant from whom the child recovers in tort has no contribution rights against the parent for negligent supervision. Shoemake further contends that appellants are not entitled to contribution, because the effect of such contribution would be to impute her negligence to her child, which is expressly prohibited by law, citing us to *Mitchell v. Akers*, 401 S.W.2d 907 (Tex.Civ.App.—Dallas 1966, writ ref'd n.r.e.). Finally, Shoemake asserts the appellants waived their point of error, because they failed to cite any case law, scholarly work, or legal authority to support what Shoemake characterizes as a subjective theory of contribution, citing us to TEX.R.APP.P. 74.

We disagree.

Shoemake, as legal representative of the Estate of Miranda Gilley, instituted the survival action under TEX.CIV.PRAC. & REM.CODE ANN. sec. 71.021 (Vernon 1986), which provides the following:

(a) A cause of action for personal injury to the health, reputation, or person of an injured person does not abate because of the death of the injured person or because of the death of a person liable for the injury.

(b) A personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person. The action survives against the liable person and the person's legal representatives.

(c) The suit may be instituted and prosecuted as if the liable person were alive.

Appellants' assertion that they are entitled to contribution from Shoemake, because the jury found her 45 percent negligent, is based on chapter 33 of TEX.CIV. PRAC. & REM.CODE ANN. (Vernon 1986), which at the time of the accident, provided, in pertinent part, the following:

Sec. 33.001. Comparative Negligence

(a) In an action to recover damages for negligence resulting in death or injury to a person or property, *contributory negligence does not bar recovery* if the contributory negligence is not greater than the negligence of the person or persons against whom recovery is sought.

(b) Damages allowed are diminished in proportion to the amount of negligence attributed to the person recovering.

. . . .

Sec. 33.011. Definitions

In this subchapter:

(1) "Claimant" means a party seeking relief, including a plaintiff, counterclaimant, or cross-claimant.

(2) "Defendant" includes any party from whom a claimant seeks relief.

. . . .

Sec. 33.012. Damages in Proportion

If there is more than one defendant and the claimant's negligence does not exceed the total negligence of all defendants, contribution must be in proportion to the percentage of negligence attributable to each defendant.

. . . .

Sec. 33.016. Credit Toward Liability

If, because of the application of the rules of this subchapter, two claimants are liable to each other in damages, the claimant who is liable for the greater amount is entitled to a credit toward his liability in the amount of damages owed him by the other claimant.

*Id.* (emphasis added).[2]

The majority of states recognize the parental immunity doctrine, but have restrict-

ed its scope by various exceptions or limitations.[3] These jurisdictions, however, are not in agreement as to the doctrine's exceptions or limitations. The most frequently cited reason in support of the rule is the protection of family peace and tranquility and the parental right to discipline, control, and care for their children. Litigation between family members has been viewed as an intrusion which might adversely affect the family unit. *Ard v. Ard,* 414 So.2d 1066, 1067 (Fla.1982).

While many states still recognize parental immunity, many jurisdictions have abolished or modified the rule as the policies behind it have lost viability. *Id.* For example, a parent who commits a willful, malicious or intentional wrong against a child has abandoned or abdicated his parental responsibility and thereby subjected himself or herself to liability. *Aboussie v. Aboussie,* 270 S.W.2d 636 (Tex.Civ.App.— Fort Worth 1954, writ ref'd).

In 1971, the Texas Supreme Court addressed the question of whether parental immunity should be extended to acts arising outside the normal family relationship of parent and child and occurring in a parent's business activity in which the child is engaged as an employee. In *Felderhoff v. Felderhoff,* the court declined to extend parental immunity to acts occurring in the conduct of a business activity wholly outside the sphere of parental duties and responsibilities. *Felderhoff,* 473 S.W.2d at 930. The *Felderhoff* court declined to abrogate the immunity rule, stating that the better approach was to retain the rule

---

**2.** Because this accident occurred in 1986, this case is governed by Chapter 33, TEX.CIV.PRAC. & REM.CODE ANN. in effect prior to its 1987 amendments. *See* TEX.CIV.PRAC. & REM. CODE ANN. ch. 33, *amended by* Act of June 16, 1987, 70th Leg., 1st C.S., ch. 2, secs. 2.03, 2.04, 2.07, 2.08, 2.11A, 1987 Tex.Gen.Laws 37, 40–44.

**3.** For a more complete discussion of the doctrine and its applicability on a state-by-state basis, *see Ard v. Ard,* 414 So.2d 1066 (Fla.1982); Annot., 6 A.L.R. 4th 1066 (1981). Appellants' reply brief cites us to eight jurisdictions which recognize an exception to the parental immunity doctrine in cases of counterclaims for contribution: *Perchell v. District of Columbia,* 444 F.2d 997 (D.C.Cir.1971); *Chinos Villas, Inc. v.*

*Bermudez,* 448 So.2d 1179 (Fla.Dist.Ct.App. 1984); *Moon by Moon v. Thompson,* 127 Ill. App.3d 657, 82 Ill.Dec. 831, 469 N.E.2d 365 (1984); *Walker v. Milton,* 263 La. 555, 268 So.2d 654 (1972); *Nolechek v. Gesuale,* 46 N.Y.2d 332, 413 N.Y.S.2d 340, 385 N.E.2d 1268 (1978); *Restifo v. McDonald,* 426 Pa. 5, 230 A.2d 199 (1967); *Bishop v. Nielsen,* 632 P.2d 864 (Utah 1981); *Baughn v. Honda Motor Corp.,* 105 Wash.2d 118, 712 P.2d 293 (1986). Appellee's post-submission supplemental brief directs us to two cases in support of her position: *Pedigo v. Rowley,* 101 Idaho 201, 610 P.2d 560 (1980) and *Baughn v. Honda Motor Co.,* 105 Wash.2d 118, 712 P.2d 293 (1986).

"with respect to alleged acts of ordinary negligence which involve a reasonable exercise of parental authority or the exercise of ordinary parental discretion with respect to provisions for the care and necessities of the child." *Id.* at 933. More important to the facts before us, the *Felderhoff* court recognized that:

> [P]eace, tranquility, and discipline in the home are endowed and inspired by higher authority than statutory enactments and court decisions. Harmonious family relationships depend on filial and parental love and respect which can neither be created nor preserved by legislatures or courts. The most we can do is to prevent the judicial system from being used to disrupt the wide sphere of reasonable discretion which is necessary in order for parents to properly exercise their responsibility to provide nurture, care, and discipline for their children. These parental duties, which usually include the provision of a home, food, schooling, family chores, medical care, and recreation, could be seriously impaired and retarded if parents were to be held liable to lawsuits by their unemancipated minor children for unintentional errors or ordinary negligence occurring while in the discharge of such parental duties and responsibilities. It is in this sphere of family relations between parent and child that the rule of immunity from litigation continues to find justification and validity.

*Felderhoff,* 473 S.W.2d at 933.

Finally, the Texas Supreme Court recently carved out another exception to the doctrine of parental immunity in *Jilani,* 767 S.W.2d 671 (Tex.1988). In *Jilani,* a mother filed a personal injury suit as next friend of her three minor children against the children's father for damages arising out of an automobile collision. *Id.* The issue before the supreme court was whether unemancipated minor children may recover damages against their parent caused by the negligence of that parent in operating a motor vehicle. In allowing children to recover against a negligent parent, the court in *Jilani* elected to adhere to the principles and policy expounded in *Felderhoff,* but

held that an automobile tort action brought by an unemancipated minor child against a parent would not threaten "parental authority or discipline" nor risk "substituting judicial discretion for parental discretion in the care and rearing of minor children." *Jilani,* 767 S.W.2d at 673.

An examination of prior case law indicates that while Texas still retains the concept of parental immunity, it has carved out two exceptions: (1) acts arising outside the normal family relationship of parent and child and occurring in the parents' business activity where the child is engaged as an employee; and (2) tort suits by unemancipated minor children for injuries received in automobile accidents caused by a parent's negligence.

While we agree with Shoemake that a child has no cause of action against a parent for injuries arising out of deficient supervision, she has cited us to no cases nor can we find any case law which specifically states that a defendant from whom the child's estate recovers in a survival action likewise has no cause of action for contribution against the parent for negligent supervision. Shoemake argues that appellants are not entitled to contribution, because to do so would impute Shoemake's negligence to her daughter, which is prohibited by law, citing us to *Johnson v. Holly Farms,* 731 S.W.2d 641 (Tex.App.—Amarillo 1987, no writ), and *Mitchell v. Akers,* 401 S.W.2d 907 (Tex.Civ.App.—Dallas 1966, writ ref'd n.r.e.). She argues that a child under five cannot be negligent as a matter of law and asserts that the attempt to impute her negligence to her child constitutes a borrowed defense.

In the *Mitchell* case, the issue before the Dallas Court of Appeals was whether the mother's contributory negligence barred recovery under the survival statute. After examining the case law in other jurisdictions, the court of civil appeals held that the contributory negligence of the mother in failing to keep proper lookout for the safety of her child did not bar recovery of damages for funeral and burial expenses and for the pain and mental anguish of the

child in a suit brought in a survival action. *Mitchell,* 401 S.W.2d at 912.

In the *Johnson* case, the parents of a minor passenger killed in an automobile collision brought a survival action against several defendants, including the driver of the car in which the child was riding. The jury found that the driver was acting as the child's agent, and because the driver was held 60 percent negligent, the trial court held the child's estate was not allowed to recover from any defendant the damages awarded by the jury. The Amarillo court held that a minor lacks the legal capacity to appoint an agent, and therefore, the negligence of an alleged agent cannot be imputed to a minor child under the doctrine of respondeat superior. *Johnson,* 731 S.W.2d at 645. They also held that the driver's negligence could not be imputed to the child through her father, because a parent's negligence is not imputable in a minor's cause of action, *id.,* and allowed the child's estate to recover the damage award.

The facts of *Johnson* are distinguishable from the case before us. The *Johnson* case dealt with imputing the negligence of an agent to a minor child under the doctrine of respondeat superior. We agree with Shoemake that a parent's negligence is not imputable to a minor's cause of action. In the case before us, however, we are faced with the issue of whether a parent who has been found contributorily negligent is immune from contributing toward the survival damages awarded by the jury to the estate.

Shoemake argues that appellants are not entitled to contribution against her, because they have no cause of action against her as Miranda's parent, citing us to *Varela v. American Petrofina Co.,* 658 S.W.2d 561 (Tex.1983). In *Varela,* the plaintiff employee settled his worker's compensation claim with his employer, then filed suit against a third-party defendant. The supreme court held that since the plaintiff-employee had settled with the employer and thus had no cause of action against that employer, the third-party defendant likewise had no claim for contribution against the employer. Unlike *Varela,* the plaintiff and defendant in *Felderhoff* had both an employee-employer and parent-child relationship at the time the cause of action arose.

The applicable statutes on contribution and comparative negligence reflect that "contributory negligence *does not bar recovery* if the contributory negligence is not greater than the negligence of the person or persons against whom recovery is sought." TEX.CIV.PRAC. & REM.CODE ANN. sec. 33.001(a) (Vernon 1986) (emphasis added). The damages allowed are diminished in proportion to the amount of negligence attributed to the person recovering. *Id.* at section (b). If two claimants are liable to each other in damages, "the claimant who is liable for the greater amount is entitled to a credit toward his liability in the amount of damages owed him by the other claimant." TEX.CIV. PRAC. & REM.CODE ANN. sec. 33.016 (Vernon 1986). We have found no Texas case, nor have we been cited to any, expressly dealing with the issue currently before us: whether the doctrine of parental immunity applies in situations where the parent would otherwise be liable under our comparative negligence statutes.

Shoemake is apparently confusing two separate and distinct theories. Parental immunity is indeed alive and well. In Texas it operates as a *bar* to recovery in suits by a child against a parent for parental negligence, subject to the narrow exceptions discussed above. We agree with Shoemake that a parent's negligence cannot be imputed to a child, and that a child less than five years of age cannot be negligent as a matter of law. We take issue, however, with her assertion that these theories prevent the concept of contribution from applying to the facts before us. To accept Shoemake's argument would require us to ignore the applicability of the contribution and contributory negligence statutes to the facts presented us.

In retaining the parental immunity rule, the most frequently cited reason in the various jurisdictions is that parental immunity is necessary for the protection of fami-

ly peace and tranquility and any change in the rule would unduly interfere with the rights of parents to discipline, control, and care for their children. *See Felderhoff,* 473 S.W.2d at 933. In the case before us, however, the public policy consideration of family peace and tranquility disappeared upon Miranda's death and at the time that Shoemake's action accrued. Under the specific facts before us, we cannot see how requiring Shoemake to pay for her percentage of negligence as found by the jury "would run counter to some public policy, real or imagined, 'for the simple reason that there is no home at all in which discipline and tranquility are to be preserved.'" *Sneed v. Sneed,* 705 S.W.2d 392, 397 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.), *citing Mahnke v. Moore,* 197 Md. 61, 77 A.2d 923 (1951).[4]

Protecting the family unit is the significant public policy behind the parental immunity doctrine. While the wrongful death and survival causes of action accrued at the death of Shoemake's daughter, Miranda Gilley, the family relationship which the rule was designed to protect was simultaneously terminated at her death.

Shoemake's arguments in support of her position would have us ignore the plain language of our comparative negligence statutes while also ignoring the public policy considerations stressed by our supreme court in its *Felderhoff* and *Jilani* decisions. Until our supreme court addresses the issue of whether the parental immunity doctrine applies in situations where contribution is sought by a third party from a parent in a survival action, we can only be guided by the express statutory language

cited above and the public policy considerations behind the *Felderhoff* and *Jilani* decisions. We hold that the parental immunity doctrine has no application to the facts before us. Specifically, we hold that the doctrine of parental immunity does not apply when a deceased child's estate recovers damages against a defendant in a survival action, and the defendant seeks contribution from the parent.

Finally, Shoemake suggests that the issues presented by appellants in this appeal are well settled and she is entitled to sanctions, because appellants have taken this appeal for delay and without sufficient cause. We find this claim clearly lacking in merit. Shoemake argues that sanctions are appropriate because appellants' point of error is contrary to well-established principles of law. While the theories asserted by Shoemake, such as parental immunity and imputing a parent's negligence to a child, are indeed well-established principles of law, their application along with the theory of contribution to the specific facts before us is clearly not well established. Shoemake cites us to no case directly on point nor were we able to find any which specifically addresses the issue presented us. Shoemake fails to specify how appellants' point of error caused delay or was without sufficient cause. We deny sanctions under TEX.R.APP.P. 84.

We hold that appellants are entitled to receive contribution from Janet Shoemake, individually, in the survival action, in the amount of $29,851.52. The trial court's judgment is reformed so as to reflect a $29,851.52 credit in favor of appellants toward the $186,910.32 they owe Janet Shoe-

---

4. In *Sneed,* a minor sued her deceased father's estate both for the wrongful death of her mother and brother and for her bodily injuries sustained in a crash of an airplane piloted by her father. In its analysis of the parental immunity rule in Texas, the San Antonio Court of Appeals noted that the *Felderhoff* court was concerned with maintaining the "wide sphere of reasonable discretion which is necessary in order for parents to provide nurture, care and discipline for their children." *Sneed,* 705 S.W.2d at 397, *citing Felderhoff,* 473 S.W.2d at 933. We find the language used by the *Sneed* court in its application of the *Felderhoff* rationale particularly relevant to the facts before us:

> Even if we are prepared to accept, without question, the theory that an uncompensated tort makes for domestic tranquility and filial respect for the negligent parent, in this case there is no possibility that recovery will disrupt a family relationship which is nonexistent and which terminated at the time that plaintiff's action under the wrongful death statute accrued. There is no basis for the contention that plaintiff's suit against her father's estate would run counter to some public policy, real or imagined, ...
> *Sneed,* 705 S.W.2d at 397.

make, individually, in the wrongful death action. All costs of this appeal are assessed against Janet Shoemake, individually. As the trial court's judgment is reformed, we affirm.