Janet SHOEMAKE, Individually and as
Administratrix of the Estate of
Miranda Gilley, Petitioner,

v.

FOGEL, LTD., A.T., Federal Group I, and
International Property Management,
Inc., Respondents.

No. D–0526.

Supreme Court of Texas.

Feb. 26, 1992.

Rehearing Overruled April 29, 1992.

---

934

Ken M. Link, Fort Worth, C. Denise Smith, Houston, for petitioner.

R. Brent Cooper, Dallas, for respondents.

## OPINION

MAUZY, Justice.

In this cause, we consider whether a defendant in a survival action arising from the death of a child may seek contribution from a negligent parent of the deceased child. We hold that the doctrine of parental immunity bars such contribution when the parent's negligence involves only negligent supervision of the child.

One month before her second birthday, Miranda Gilley nearly drowned in the swimming pool at her apartment complex. The child was rescued and temporarily revived, but four months later died from the injuries she had suffered. Her mother, Janet Shoemake, then brought this suit against the apartment complex owners, Fogel, Ltd. A.T. and Federal Group I, and the apartment complex manager, International Property Management, Inc. (collectively "Fogel").[1] In addition to seeking damages in her own capacity for wrongful death, Shoemake brought a survival action in her capacity as representative of the child's estate. *See* Tex.Civ.Prac. & Rem.Code §§ 71.001–.011 (wrongful death), 71.021 (survival). The jury awarded $285,492.28 to Shoemake on her wrongful death claim, and $50,969 to the child's estate in the survival action. Considering the negligence that caused the near-drowning, the jury attributed a total of fifty-five percent to the Fogel defendants, and the remaining forty-five percent to Janet Shoemake.

As to the wrongful death action, the trial court reduced Shoemake's recovery by forty-five percent, in accordance with the findings on comparative negligence. *See* Tex. Civ.Prac. & Rem.Code ch. 33. That aspect of the judgment was not appealed.

In connection with the survival action, Fogel argued that a similar result should obtain; *i.e.*, that it was entitled to a forty-

five percent contribution from Shoemake, to be credited against the amount owed her on the wrongful death claim. The trial court rejected that argument and rendered judgment for the estate in the full amount of the jury verdict, along with pre-judgment interest. The court of appeals reversed, holding that the requested contribution was available under sections 33.012 and 33.016 of the Texas Civil Practice and Remedies Code. 795 S.W.2d 903.

Shoemake now argues that Fogel is barred from contribution against Shoemake, because the doctrine of parental immunity bars Miranda Gilley's estate from recovering damages against Shoemake. We agree.

■ A defendant's claim of contribution is derivative of the plaintiff's right to recover from the joint defendant against whom contribution is sought. *Varela v. American Petrofina Co. of Texas*, 658 S.W.2d 561, 562 (Tex.1983). Thus, Fogel's claim of contribution depends upon whether Miranda Gilley's estate has the right to recover damages from Shoemake.

■ The right of an unemancipated minor to bring a tort action against his or her parent is restricted by the doctrine of parental immunity. *See Felderhoff v. Felderhoff*, 473 S.W.2d 928 (Tex.1971). The purpose of the doctrine is "to prevent the judicial system from being used to disrupt the wide sphere of reasonable discretion which is necessary in order for parents to properly exercise their responsibility to provide nurture, care, and discipline for their children." *Id.* at 933.

■ In *Felderhoff*, this court held that parental immunity does not extend to suits arising in the course of the parent's business activities. *Id.* More recently, this court held that the doctrine is inapplicable to automobile tort actions. *Jilani v. Jilani*, 767 S.W.2d 671 (Tex.1988). In both cases, though, we adhered to the view that

---

1. Shoemake's original petition also named as defendants two individual owners of the apartment complex, Danny Fogel and William Hummel.

a parent retains immunity as to "alleged acts of ordinary negligence which involve a reasonable exercise of parental authority or the exercise of ordinary parental discretion with respect to provisions for the care and necessities of the child." *Felderhoff,* 473 S.W.2d at 933; *Jilani,* 767 S.W.2d at 672.

■ In the present case, Fogel alleged that Shoemake was negligent in the "management, supervision and control" of Miranda Gilley, and that this negligence proximately caused Miranda's death.[2] Because Fogel chose not to bring forward a statement of facts, *see* Tex.R.App.P. 53(d), we cannot determine the exact circumstances of the child's injuries. We assume, however, that there was no evidence that Shoemake was negligent in any manner other than that suggested by the pleadings. *See Christiansen v. Prezelski,* 782 S.W.2d 842, 843 (Tex.1990) (explaining Rule 53(d)); *see also Vance v. Wilson,* 382 S.W.2d 107, 108 (Tex.1964) (judgment disposes of all issues presented by the pleadings). Thus, we assume the evidence indicated that Shoemake was negligent in the management, supervision and control of her child. Those responsibilities entail exactly the sort of parental authority that remains protected under *Felderhoff* and *Jilani.* If Shoemake's negligence entailed some other sort of authority, such as business authority or driving responsibilities, Fogel has failed to sustain its burden of presenting a sufficient record to show the trial court's error. *See* Tex.R.App.P. 50(d); *Christiansen,* 782 S.W.2d at 843.

The court of appeals considered the policy concerns underlying parental immunity, but concluded that they were not implicated by the present facts. The usual rationale for retaining parental immunity, the court determined, is that "parental immuni-

ty is necessary for the protection of family peace and tranquility and any change in the rule would unduly interfere with the rights of parents to discipline, control, and care for their children." 795 S.W.2d at 907–08. Applying the first half of that rationale to the present case, the court decided that "the public policy consideration of family peace and tranquility disappeared upon Miranda's death and at the time that Shoemake's action accrued." *Id.* at 908. The court therefore held that parental immunity did not bar Fogel from seeking contribution against Shoemake. *Id.*

In *Felderhoff,* this court did consider the issue of family harmony. We expressly recognized, however, that the aim of domestic tranquility did not provide a realistic justification for parental immunity:

> We recognize that peace, tranquility and discipline in the home are endowed and inspired by higher authority than statutory enactments and court decisions. Harmonious family relationships depend on filial and parental love and respect which can neither be created nor preserved by legislatures or courts.

473 S.W.2d at 933. *See also Price v. Price,* 732 S.W.2d 316, 318 (Tex.1987) (rejecting view that interspousal immunity promotes domestic tranquility).

■ The real objective of parental immunity, as stated in *Felderhoff,* is not to promote family harmony; rather, it is simply to avoid undue judicial interference with parental discretion. The discharge of parental responsibilities, such as the provision of a home, food and schooling, entails countless matters of personal, private choice. In the absence of culpability beyond ordinary negligence, those choices are not subject to review in court.

■ As the court of appeals observed, family harmony may not be a practical

---

2. Fogel Ltd., A.T. and Danny Fogel both alleged that Shoemake was negligent in the "management, supervision and control" of Miranda Gilley. Federal Group I alleged that Shoemake "negligently or intentionally failed to maintain proper supervision" of Miranda Gilley. Interna-

tional Property Management alleged that Shoemake was "negligent on the occasion in question, including in her management, supervision and control" of Miranda Gilley. William Hummel alleged that Shoemake "negligently failed to maintain proper supervision" of Miranda Gilley.

concern in cases like the present one, where the family unit no longer exists. Concerns about judicial interference with parental authority, though, do survive the death of a child. Though hindsight may be clear, a court should still be reluctant to "second-guess a parent's management of family affairs" beyond basic, statutory protections. *Paige v. Bing Construction Co.*, 61 Mich.App. 480, 233 N.W.2d 46, 49 (1975). We hold, therefore, that a child's death does not, by itself, extinguish the parent's immunity from liability for negligent supervision.[3] *See, e.g., Lewis v. Farm Bureau Mut. Auto Ins. Co.*, 243 N.C. 55, 89 S.E.2d 788 (1955).

■ Fogel claims, however, that Shoemake has waived any claim of parental immunity by failing to plead such immunity specifically. Generally, an affirmative defense is waived if it is not pleaded. Tex. R.Civ.P. 94. Though not specifically mentioned in Rule 94, immunity is an affirmative defense that ordinarily must be pleaded to avoid waiver. *See, e.g., Davis v. City of San Antonio*, 752 S.W.2d 518, 519–20 (Tex.1988) (governmental immunity).

■ Shoemake did not specifically plead the defense of parental immunity. However, she did plead, as an affirmative defense against each of Fogel's counterclaims, that Fogel was "not entitled to indemnity or contribution from Counter-defendant ... as a matter of law." Fogel filed no special exceptions to clarify this claim. Thus, Fogel cannot now complain that Shoemake's pleading was insufficiently specific. Tex.R.Civ.P. 90, 91; *see, e.g., Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982); *Manufactured Housing Management Corp. v. Tubb*, 643 S.W.2d 483, 487 (Tex.App.—Waco 1982, writ ref'd n.r.e.).

■ Moreover, Rule 94's requirement of pleading is not absolute. Recently, in *Phillips v. Phillips*, 820 S.W.2d 785 (Tex. 1991), this court considered the circumstances in which the failure to plead an affirmative defense does not result in waiver. We noted that the defense of illegality need not be pleaded, even though it is specifically listed in Rule 94, because "[p]leading an agreement illegal on its face in effect anticipates the defense," and because "[e]nforcement of an illegal agreement violates public policy." 820 S.W.2d at 789–90. For those same reasons, we held that "the defense of penalty is not waived by the failure to plead it if it is apparent on the face of the petition and established as a matter of law." *Id.*

The same considerations also apply to the defense of parental immunity. If a child sued a parent for the negligent performance of parental duties, the pleading would effectively anticipate the defense of parental immunity. Moreover, in view of the concerns discussed above, allowing the action would violate public policy; the policy concerns behind parental immunity are at least as great as those underlying the penalty defense. For these reasons, we conclude that the defense of immunity, like the defense of penalty, is not waived by the failure to specifically plead it if it is apparent on the face of the petition and established as a matter of law.

In the present case, the pleadings of two of the respondents alleged that Shoemake had been negligent in the "management, supervision and control," of Miranda Gilley, while the other respondent alleged that Shoemake "negligently or intentionally failed to maintain proper supervision" of Miranda Gilley.[4] The respondents rely on their pleadings, and not on any factual matters, to support their contribution claim: in designating the record on appeal, the respondents stated that "[t]he issues in this case are ones solely of law," and for that reason chose not to bring forward a statement of facts. Because the defense of

---

**3.** We expressly disapprove the dicta in *Sneed v. Sneed*, 705 S.W.2d 392, 397 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.), to the extent that it conflicts with this opinion.

**4.** See note 2, *supra*.

parental immunity was apparent on the face of the pleadings, and its application was purely a matter of law, there was no need for a separate jury finding on immunity. We hold, then, that the defense of parental immunity was not waived by Shoemake's failure to specifically plead it.

■ Because the child's estate has no viable negligence claim against Shoemake, Fogel has no viable contribution claim against Shoemake. *Varela,* 658 S.W.2d at 562; *see also Johnson v. Holly Farms of Texas,* 731 S.W.2d 641, 645 (Tex.App.— Amarillo 1987, no writ) (parent's negligence cannot be imputed to child's cause of action). Shoemake's negligence does affect her recovery under the wrongful death statute; but it does not affect the recovery of her child's estate under the survival statute. *See Mitchell v. Akers,* 401 S.W.2d 907 (Tex.Civ.App.—Dallas 1966, writ ref'd n.r.e.).

We conclude that the court of appeals erred in reforming the trial court's judgment to reflect a $29,851.52 credit in favor of Fogel. We reverse the judgment of the court of appeals and affirm the trial court's judgment in favor of the estate of Miranda Gilley.

Dissenting opinion by HECHT, J., joined by PHILLIPS, C.J., and GONZALEZ and DOGGETT, JJ.

HECHT, Justice, dissenting.

The central issue in this case is whether a parent who negligently injures his or her child is liable for contribution to another whose negligence also caused the injury. The Court holds that if the parent is negligent only in the management, supervision and control of the child, a claim for contribution against the parent by the joint tort-feasor is barred by parental immunity. While I do not disagree with this holding as an abstract legal proposition, I do disagree that it can be applied in this case when parental immunity was never pleaded or raised in any way in the trial court. I therefore dissent.

Defendants in this case pleaded that plaintiff Janet Shoemake was negligent, not only in the management, supervision and control of her daughter, but generally in her failure to exercise ordinary care.[1] Defendants sued for contribution from Shoemake. The jury found that Shoemake was 45% responsible for her daughter's accident.

Shoemake never pleaded parental immunity. Although the defense is not among the affirmative defenses listed in Tex. R.Civ.P. 94, I agree with the Court that it is, in the language of the rule, "a matter constituting an avoidance or affirmative defense." *See also Davis v. City of San Antonio,* 752 S.W.2d 518, 519–520 (Tex. 1988) (governmental immunity is an affirmative defense). As such, it must be pleaded or it is waived. Tex.R.Civ.P. 94; *see also Davis,* 752 S.W.2d at 520 (governmental immunity and charitable immunity must be pleaded as affirmative defenses or they are waived).

Nevertheless, the Court excuses the failure to plead parental immunity in this case because the defense "is apparent on the face of the pleadings, and is established as a matter of law." *Ante,* at 937. Although one might well argue, with respect to the first phrase quoted, that it is apparent in this case from defendants' pleadings that Shoemake *should* have pleaded parental immunity, it can hardly be said that she did. And it cannot be said, with respect to the second quoted phrase, that the defense is established as a matter of law. To the

---

1. Defendants Fogel, Ltd. and Danny Fogel pleaded that "Janet Shoemake was negligent in the management, supervision and control of Miranda Gilley". Defendants Federal Group I and William Hummel pleaded that "Janet Shoemake failed to exercise ordinary care for the safety of her daughter" and "negligently ... failed to

maintain proper supervision of her daughter". Defendant International Property Management, Inc. pleaded that "Janet Shoemake was negligent on the occasion in question, including, in her management, supervision and control of Miranda Gilley".

contrary, whether the defense is applicable depends upon whether Shoemake was negligent and in what particulars. Shoemake's negligence was a matter properly decided by the jury upon the evidence submitted. It cannot be determined from the pleadings alone whether Shoemake was protected by parental immunity. According to the Court, if defendants here could demonstrate that Shoemake was negligent other than in the management, supervision and control of her daughter, parental immunity would not insulate her from liability. Thus, whether the defense of parental immunity is available to Shoemake is very much a question of fact.

The Court also excuses Shoemake's failure to plead parental immunity on the ground that it would be against public policy to hold her liable for contribution for her daughter's injuries. In so doing, the Court contradicts its own authorities. Surely it is no more against public policy to hold a parent liable when he or she might have claimed immunity than it is to hold the government or a charity liable when they might have claimed immunity. As the Court notes, citing *Davis*, 752 S.W.2d at 520, we have held that governmental immunity and charitable immunity can be waived by the failure to assert them as affirmative defenses. If immunity can be waived by governments and charities, then it seems to me it can be waived by parents. The converse is also true: if a parent may assert immunity without pleading it, there is no logical basis for denying the same right to others, like governments and charities. That conclusion, however, would contradict *Davis*. Thus, the Court has either overruled *Davis* without saying so, or cited it without following it, or carved out a special exception for this case.

As its sole authority for excusing the pleading of parental immunity in this case, the Court cites its recent opinion in *Phillips v. Phillips*, 820 S.W.2d 785, 789 (Tex. 1991), in which we held that "the defense of penalty is not waived by the failure to plead it if it is apparent on the face of the petition and established as a matter of law." In *Phillips*, the plaintiff pleaded that she was entitled to recover ten times her actual damages according to a provision in a contract she had with her husband. Assuming she was correct, her own pleadings conclusively demonstrated that she sought to enforce a penalty. We held that a provision authorizing recovery of decuple damages was an unenforceable penalty on its face. No evidence could demonstrate that such a provision was any less a penalty than it appeared on the face of plaintiff's pleadings. Furthermore, we observed that a penalty provision was similar to an illegal contract, and that "the courts will not enforce a plainly illegal contract even if the parties do not object." *Id.* at 789; *Texas & P. Coal Co. v. Lawson*, 89 Tex. 394, 34 S.W. 919, 921 (1896). Penalty, like illegality, but unlike immunity, cannot be waived.

*Phillips* is simply inapposite in this case. Here, assuming defendants are correct in their allegations that Shoemake was negligent, her liability might or might not be barred by immunity, according to the Court. Both Shoemake's liability and her immunity from liability are factual issues to be resolved on the evidence. Although the Court refers to Shoemake's immunity as being both apparent on the face of her pleadings and established as a matter of law, it is simply neither. Even if Shoemake's immunity could be established by defendants' pleadings, she could waive that immunity, and the law would not protect her without a timely assertion of the defense. In this respect immunity is different from penalty and illegality. By extending the holding of *Phillips* from the defense of penalty to the defense of immunity, the Court necessarily holds that the requirement that affirmative defenses be pleaded will be relaxed whenever it appears from the claimant's pleadings that an affirmative defense could be pleaded. While I do not agree with this change in our pleading rules, the Court will lack justification for not adhering to it when it is not so intent upon a result as it is in this case.

The Court also states that Shoemake's pleadings raise *some* affirmative defense, even if its exact nature cannot be ascertained. The language to which the Court points states:

"Counter–Defendant would further show that as a matter of an affirmative defense, Counter–Plaintiff herein is not entitled to indemnity nor contribution from Janet Shoemake, as a matter of law."

Shoemake included an essentially identical paragraph in all her pleadings in response to defendants' counterclaims. The Court states that because defendants did not specially except to this pleading, they cannot complain that it lacks specificity. There are two problems with the Court's position. The first is that Shoemake never argued that the quoted language was sufficient to raise immunity as an affirmative defense until her rebuttal during oral argument in this Court. Having failed to raise this argument in the court of appeals, Shoemake ought not to be heard to make it now. The second flaw in the Court's position is that it violates the rule that pleadings must give fair notice of what is alleged. TEX.R.CIV.P. 45(b). Pleading "as an affirmative defense, I am not liable", gives no notice at all, much less fair notice, of the allegation made. The Court must conclude that defendants should have known from this pleading that Shoemake was asserting immunity. Again, although I do not agree with this conclusion, the Court offers no reason for not applying the same rule in other cases.

I would hold that Shoemake could be protected by parental immunity only if she affirmatively pleaded it in the trial court, and would therefore affirm the judgment of the court of appeals. Accordingly, I dissent.

PHILLIPS, C.J., and GONZALEZ and DOGGETT, JJ., join in this dissenting opinion.

