William E. HALL, as next friend of
Katherine Singleton and Katherine
Singleton, Appellants,

v.

Jimmie Lynn MARTIN, Brent Martin,
and William Singleton, III,
Appellees.

No. 09–92–009 CV.

Court of Appeals of Texas,
Beaumont.

March 25, 1993.

Rehearing Denied April 15, 1993.

William E. Hall, Jr., Law Offices of William E. Hall, Jr., Ruben Hope, Jr., Ruben Hope & Associates, P.C., K. Michael Mayes, Law Offices of K. Michael Mayes, P.C., Conroe, for appellant.

James S. Hile, Whittington, Pfeiffer & Vacek, Wilton F. Chalker, Chalker, Bair & Associates, John Milutin, Hardy, Milutin & Johns, Houston, Ché D. Williamson, Marvin Moos, Wetzel & Herron, The Woodlands, for appellee.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

This is a summary judgment appeal. Fourteen-year-old Katherine Singleton was injured on June 2, 1987, in a motorcycle

accident. Suit was brought against the motorcycle operator and others. The court appointed the Hon. William E. Hall to represent Katherine as next friend. Hall filed a negligence and gross negligence suit against Katherine's mother and managing conservator Jimmie Lynn Martin, step-father Brent Martin, and father and possessory conservator William Singleton, III. These defendants filed separate motions for summary judgment which were granted by the trial court and severed from the original suit into the suit now on appeal. Appellants raise three points of error.

The points of error read as follows:

Point of Error One: Due to the existence of material fact issues, the trial court erred in granting summary judgment as to Jimmie Lynn Martin.

Point of Error Two: Due to the existence of material fact issues, the trial court erred in granting summary judgment as to Brent Martin.

Point of Error Three: Due to the existence of material fact issues, the trial court erred in granting summary judgment as to William Singleton, III.

### Chronicle of Events

On June 2, 1987, Katherine Singleton, who was fourteen years of age at the time, was a rider on a motorcycle being operated by James Hicks. She was not wearing a helmet when Mr. Hicks lost control of the motorcycle and the motorcycle crashed. Katherine Singleton was severely injured. At that time, appellee Jimmie Lynn Martin, the mother of Katherine, and Brent Martin, the step-father, owned a moped scooter that was regularly ridden by the appellant, Katherine Singleton.

Upon meeting Hicks in the neighborhood, she decided to ride on his motorcycle with him. On that day Katherine Singleton had her mother's limited permission to ride the moped around the neighborhood to solicit contributions for a school fund-raising activity. Katherine was told to stay within her neighborhood. Ms. Martin did not give Katherine permission to ride with James Hicks on his motorcycle.

Jimmie Lynn Martin is the natural mother of the minor, Katherine Singleton. At the time of the accident, Katherine resided with her mother, Jimmie Lynn Martin. Ms. Martin was returning home from work at approximately 4:45 p.m. on June 2, 1987, when she discovered that Katherine had been involved in a motorcycle accident.

Jimmie Lynn Martin and William Singleton, III, were divorced in April of 1982 in Harris County. Mr. Singleton was granted visitation rights as possessory conservator. At the time of the accident Mr. Singleton did not have custody or control of his minor daughter. Mr. Singleton did not learn of the accident until his daughter was at the hospital.

As for Mr. Brent Martin, appellant's step-father, he received Singleton into his home and held her out as a member of his family. Brent Martin had assumed the care and support of Katherine since February, 19, 1983. Brent Martin has never adopted Katherine and has never been appointed her conservator. On June 2, 1987, the day of the accident, Brent Martin did not have knowledge of Katherine riding a motorcycle. At no time did he ever give Katherine permission to ride a motorcycle. Mr. Martin had no personal knowledge of this accident or the events leading to the accident until he was informed that Katherine was injured and was in the hospital.

### Procedural History

This suit was originally brought by Jimmie Lynn Martin, individually, and as next friend of Katherine Singleton, in cause No. 87–06–02110–CV in the 221st District Court of Montgomery County, against the motorcycle operator, James Richard Hicks, a minor, through his natural guardian, his mother Karen Hicks, for negligence and gross negligence. Additionally, a claim under the Texas Tort Claims Act was filed against Montgomery County for defective road conditions. James Hicks, Karen Hicks, and Montgomery County sued the appellee Jimmie Lynn Martin for negligence.

Suit was thereafter brought by the attorney ad litem, William Hall, as next friend

to Katherine, against Jimmie Lynn Martin for negligence. Later, Mr. Hall amended the original petition to include Brent Martin, the appellant's step-father, and William Singleton, III, the appellant's natural father, alleging negligence against them. The appellees, Jimmie Lynn Martin, Brent Martin and William Singleton, III, each filed separate motions for summary judgment, as to the claims brought by the appellant Katherine. The trial court granted their summary judgment motions. The trial court granted severance from the remaining claims.

### The Appellants' Argument

Appellants contend that Brent Martin, Jimmie Lynn Martin, and William Singleton, were all negligent in (1) purchasing a moped motor scooter; (2) entrusting a moped motor scooter to appellant without proper instructions, training and safety equipment; (3) failing to purchase a helmet for the moped motor scooter; (4) breaching a duty to exercise care that a person who has a special relationship to a child must exercise in order to protect the child from unreasonable risk of injury; (5) undertaking an act and violating the duty to act with reasonable care; (6) failing to provide protective headgear or helmet and in failing to instruct, train and require appellant to wear protective headgear when the appellees knew or should have known that Katherine would and might ride the moped, and/or other motor bikes and the injuries to Katherine might or would occur in the event no helmet was worn; (7) allowing Katherine to operate or ride on a motor scooter or motorcycle without proper instruction, training, protective headgear or a helmet; and (8) that the appellees were negligent per se in failing to purchase the required protective headgear or a helmet.

Appellees contend that there was no cause of action against them. Appellees stated they did not breach a duty or cause the accident because of the fact that they all were protectively covered under the doctrine of parental immunity and that they had no duty and breached no duty, and the accident was not the proximate cause of any act or conduct on their part. We agree.

### The Standard of Review

■ The motion for summary judgment and supporting evidence must show that the movant is entitled to judgment as a matter of law. *McFadden v. American United Life Ins. Co.,* 658 S.W.2d 147 (Tex. 1983). The basic question on appeal from a summary judgment granted to a defendant is not whether the summary judgment proof raises fact issues related to the essential elements of a plaintiff's claim or cause of action but whether the summary judgment proof establishes as a matter of law that there is no genuine issue of a material fact because one or more of the essential elements of the plaintiff's cause of action have been negated. *Gibbs v. General Motors Corporation,* 450 S.W.2d 827 (Tex.1970).

■ In reviewing a summary judgment, appellate courts should follow these standards: (1) that the movant has the burden to show that there is no genuine issue of material fact *and that the movant is entitled to judgment as a matter of law;* (2) in deciding whether there is a disputed material fact issue precluding summary judgment, the court takes as true the evidence favorable to the nonmovant; and (3) every reasonable inference is indulged in favor of a nonmovant and all doubts are resolved in the nonmovant's favor. *See Nixon v. Mr. Property Management,* 690 S.W.2d 546 (Tex.1985).

■ Issues not expressly presented to the trial court by written motion or response to the motion for summary judgment cannot be considered on appeal as grounds for reversal. *See City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979). This Court may not raise grounds for reversal *sua sponte. San Jacinto River Authority v. Duke,* 783 S.W.2d 209 (Tex.1990). When an order granting summary judgment does not state the specific ground on which it was granted, the summary judgment should be affirmed if any ground is sufficiently proved. *See Woomer v. City of Galveston,* 765

S.W.2d 836 (Tex.App.—Houston [1st Dist.] 1988, writ denied).

### The Arguments for Jimmie Lynn Martin

Ms. Martin contends that there is no genuine issue as to any material fact, therefore, she was entitled to summary judgment as a matter of law against appellants. She bases her contentions on the rule that (1) the plaintiff is not entitled to sue her based on the Texas Supreme Court's ruling that the doctrine of parental immunity exists in Texas and is the current law and (2) that Katherine has failed as a matter of law to state a cause of action for negligence against Jimmie Lynn Martin. Also, Katherine has failed to demonstrate a breach of duty or an exception to the Texas doctrine of parental immunity.

■■ Parental immunity is the law in Texas. See Jilani By and Through Jilani v. Jilani, 767 S.W.2d 671 (Tex.1988); Felderhoff v. Felderhoff, 473 S.W.2d 928 (Tex. 1971). The parental immunity doctrine is designed for the protection of family peace and tranquility and the parental right to discipline, control and care of children. The courts in Texas have held that to allow litigation between parents and a child would be an adverse, unwarranted intrusion into the family circle. Texas, however, has carved out three exceptions to the parental immunity doctrine. The three are:

1. Parental immunity does not apply when a parent commits a willful, malicious, or intentional wrong against a child or abandons or abdicates his parental responsibility and thereby subjects himself or herself to liability.

2. Texas does not apply the parental immunity doctrine when the act complained of arises outside of a normal family relationship of a parent to a child, such as a business activity in which the child is the employee and the parent is the employer.

3. The third exception to the parental immunity doctrine allows a child to recover against a negligent parent for damages caused by the negligent parent in operating a motor vehicle.

■ The appellant Katherine's cause of action does not fall within any of the three exceptions to the parental immunity doctrine. Therefore, this salutary doctrine protects the appellee Jimmie Lynn Martin under this record. Parental immunity applies with respect to alleged acts of ordinary negligence which involve a reasonable exercise of parental authority or the exercise of ordinary parental discretion. The Court in Felderhoff, supra, stated at page 933 that:

[P]eace, tranquility and discipline in the home are endowed and inspired by higher authority than statutory enactments and court decisions. Harmonious family relationships depend on filial and parental love and respect which can neither be created nor preserved by legislatures or courts. The most we can do is to prevent the judicial system from being used to disrupt the wide sphere of reasonable discretion which is necessary in order for parents to properly exercise their responsibility to provide nurture, care, and discipline for their children. These parental duties, which usually include the provision of a home, food, schooling, family chores, medical care, and recreation, could be seriously impaired and retarded if parents were to be held liable to lawsuits by their unemancipated minor children for unintentional errors or ordinary negligence occurring while in the discharge of such parental duties and responsibilities. It is in this sphere of family relations between parent and child that the rule of immunity from litigation continues to find justification and validity.

In Jilani, supra, the Texas Supreme Court interpreted the scope of the parental immunity doctrine as it relates to (1) the reasonable exercise of parental authority and (2) the exercise of ordinary parental discretion. The Supreme Court recognized that reasonable parental discretion still needed protection. The Court went on to say that Jilani limited parental immunity to those "transactions that are essentially parental." Id. 767 S.W.2d at 673. The Court held that operating a motor vehicle

in which the minor child was riding was not an essential parental activity.

■■■■■■ Katherine's factual contentions, we think, fall within the scope of the reasonable exercise of parental authority and ordinary parental discretion. We affirm the judgment favorable to Jimmie Lynn. By like reasoning the judgments favorable to Brent Martin and William Singleton, III, are affirmed. The parental immunity doctrine validly and realistically protects the family including Brent and William. Of paramount importance is the protection and nurturing of the parent-child relationship. A recent case has reaffirmed that a child has no cause of action against a parent for injuries arising out of deficient supervision. *See Fogel, Ltd., A.T. v. Shoemake,* 795 S.W.2d 903 (Tex.App.—Fort Worth 1990), *rev'd on other grounds, Shoemake v. Fogel, Ltd.,* 826 S.W.2d 933 (Tex.1992).

In *Shoemake,* the Supreme Court held that the right of an unemancipated minor to bring a tort action against her parent is restricted and proscribed by the parental immunity doctrine and the purpose of this doctrine is to prevent the court system from being employed to disrupt the broad sphere of discretion. This discretion is necessary in order for parents to properly exercise their responsibility to provide nurture, care and discipline for their children. The Supreme Court wrote:

> [W]e adhered to the view that a parent retains immunity as to "alleged acts of ordinary negligence which involve a reasonable exercise of parental authority or the exercise of ordinary parental discretion with respect to the provisions for the care and necessities of the child."

*Id.,* 826 S.W.2d at 935–936.

### The Insurance Issue

■■■■ The appellants raised a contention and issue about the fact that Katherine's mother had insurance coverage. It must be clearly understood that liability insurance is not relevant upon the issue of whether a parent acted negligently. Evidence that a parent was or was not insured against liability is not admissible upon the issue of whether he or she acted negligent-

ly. TEX.R.CIV.EVID. 411. TEX.R.CIV.P. 38(c) disallows the joinder of liability or indemnity insurance companies from tort cases unless the company is liable by statute or contract to the person injured or damaged. Here liability insurance cannot create a legal duty. *Liability insurance cannot vitiate the parental immunity doctrine.*

### The Constitutionality of the Parental Immunity Doctrine

The appellants assert that the parental immunity doctrine should be considered unconstitutional as a matter of law under this record. The cases relied upon by appellants are authorities from other jurisdictions. We conclude the question of constitutionality is no longer in doubt.

### The Negligence Issue

As a separate, distinct and independent basis for our affirmance of the judgments below, we conclude that the movants have negated the issues of negligence and proximate cause.

■■■ The common law duty of negligence consists of three essential elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. In order for a plaintiff to recover on the negligence issue, he must first prove that a duty exists and the violation of the duty owed to him by the defendant. The Texas Supreme Court has defined "duty" as:

> [I]f a party negligently creates a dangerous situation it then becomes his duty to do something about it to prevent injury to others if it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured thereby.

*Buchanan v. Rose,* 138 Tex. 390, 159 S.W.2d 109 (1942).

■■■ It is important to note that in Texas an unemancipated minor may not sue his parents for damages based on ordinary negligence involving parental functions. This doctrine encompasses those alleged

acts of ordinary negligence which involve a reasonable exercise of parental authority or the exercise of ordinary parental discretion with respect to the provisions for he care and necessities of the child.

In the case at bar, Ms. Martin did not negligently create the situation which led to the accident involving her minor daughter. Ms. Martin was unaware that her daughter was riding Hicks' motorcycle prior to the accident. Katherine was permitted to ride the moped. Neither of the first two elements of a negligence cause of action exist. The same reasoning applies to William and Brent. Therefore, Ms. Martin, William and Brent cannot be held liable on the theory of negligence.

■ The question of duty is a question of law. The appellant attempts to assert that her mother had a duty to provide safety equipment, training or instruction because Ms. Martin purchased a moped and allowed her daughter to ride it. We find that there is no negligence in the benevolence of parents toward their child. Purchasing a moped did not negligently create the situation in which Katherine was injured. The "special duty of care" cited by appellants in their brief of the parents' duty to others for the negligent acts of their child is misleading. Their argument is skewed. *See* RESTATEMENT (SECOND) OF TORTS § 316 (1965), which states:

A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent

(a) knows or has reason to know that he has the ability to control his child, and

(b) knows or should know of the necessity and opportunity for exercising such control.

*This "special duty of care" only applies to the parent's control of the child's conduct as it relates to others.* In the case at bar there was no special duty of care because the conduct involved did not involve others. Katherine is not "others"; she is the appellant.

### The Proximate Cause Issue

■ Before a cause of action for negligence can exist, a third element must be present. There must be a finding of proximate cause before there can be a recovery from the negligent person. Proximate cause in Texas consists of two concepts: (1) cause in fact, and (2) foreseeability. These basic elements must be present. *See Farley v. M & M Cattle Co.*, 529 S.W.2d 751 (Tex.1975). Cause in fact means the act or omission was a substantial factor in bringing about the injury without which no harm would have occurred.

■ As for the second basic element of proximate cause, foreseeability, the law requires that a person of ordinary prudence (using ordinary care) should have anticipated the damages to others caused by his negligent act. *See Clark v. Waggoner,* 452 S.W.2d 437 (Tex.1970). Ms. Martin could not have reasonably foreseen that her minor daughter would be riding on Hicks' motorcycle. Ms. Martin's daughter did ask for her permission to ride the moped, which was granted upon the condition she only ride in the neighborhood subdivision. The record negates proximate cause as to each appellee.

In brief, pragmatic summary, Katherine's mother instructed her to use the moped in her residential neighborhood to raise money for a school project. Katherine disregarded her mother's instructions; she disobeyed her parent in that sense. Katherine's failure to heed her mother's instructions, we conclude, does not explode—does not emasculate—the parental immunity doctrine.

The judgments below are affirmed.

AFFIRMED.

BURGESS, Justice, dissenting.

I respectfully dissent. Crucial to the determination of all three points of error is appellants' constitutional challenge to the doctrine of parental immunity. Appellees claim Katherine's cause of action is barred by the doctrine of parental immunity. There was no bar to a suit against a parent at common law until the doctrine was creat-

ed by judicial fiat in 1891 by *Hewellette v. George*, 68 Miss. 703, 9 So. 885 (1891). Texas recognized the doctrine for the first time in 1948. *Garza v. Garza*, 209 S.W.2d 1012, 1014 (Tex.Civ.App.—Eastland 1948, no writ). Although Katherine's cause of action did not accrue until 1987, the courts impose parental immunity upon her cause of action for negligence. Katherine argues that such a restriction is prohibited by the equal protection clause of the Texas Constitution. TEX. CONST. art. I, § 3. I agree. The parental immunity doctrine has survived challenge on the basis of public policy. *Shoemake v. Fogel, Ltd.*, 826 S.W.2d 933, 935 (Tex.1992); *Jilani v. Jilani*, 767 S.W.2d 671, 672 (Tex.1988); *Felderhoff v. Felderhoff*, 473 S.W.2d 928, 933 (Tex.1971). In approving the public policy objectives of the doctrine without addressing any constitutional issues, the Texas Supreme Court rejected the criticism of a number of scholarly articles. *See* RESTATEMENT (SECOND) OF TORTS § 895G, cmt. i. (1977); Romualdo P. Eclavea, *Liability of Parent for Injury To Unemancipated Child Caused by Parent's Negligence—Modern Cases*, 6 A.L.R. 4TH 1066 (1981); 2 FOWLER V. HARPER, FLEMING JAMES, JR. & OSCAR S. GRAY, THE LAW OF TORTS § 8.11 (2nd ed.1986); William E. McCurdy, *Torts Between Persons in Domestic Relation*, 43 HARV. L. REV. 1030 (1930); Comment, *Parent–Child Torts in Texas and the Reasonable Prudent Parent Standard*, 40 BAYLOR L. REV. 113 (1988); Chanse McLeod, Note, *Jilani v. Jilani: The Erosion of the Parental Tort Immunity Doctrine in Texas*, 28 HOUS. L.REV. 717 (1991).

*Shoemake, Jilani* and *Felderhoff* partially abrogated the doctrine of parental immunity. Parents can no longer claim immunity in suits for negligence arising in the course of the parent's business activities, *Felderhoff*, 473 S.W.2d at 933 or involving a motor vehicle, *Jilani*, 767 S.W.2d at 673. *Shoemake* rejected the family harmony policy argument in support of immunity, but upheld the doctrine on the basis of avoiding undue judicial interference. In *Shoemake*, the supreme court recognized that *Price v. Price*, 732 S.W.2d 316 (Tex.1987), abolished the doctrine of spousal immunity for all purposes, but held that in addition to the inadequate justification of protection of family harmony rejected by *Price*, the parental immunity doctrine avoids undue judicial interference with parental discretion. *Shoemake*, 826 S.W.2d at 936. *Shoemake* did not address that part of *Price* which held that the Texas equal protection clause required the doctrine be abolished for both vehicular and non-vehicular torts, and there is no indication in *Shoemake, Jilani* and *Felderhoff* that the parties raised an equal protection argument.

Equal protection means that all persons similarly circumstanced shall be treated alike both in privileges conferred and liabilities imposed. TEX. CONST. art. I, § 3 interp. commentary (Vernon 1984). The doctrine of parental immunity treats parents different from all other tortfeasors. Distinction classification is not repugnant to the constitution so long as there is a reasonable basis for the distinction and the law operates equally on all members of the class. *Inman v. Railroad Comm'n*, 478 S.W.2d 124 (Tex.Civ.App.—1972, writ ref'd n.r.e.); *Creps v. Board of Firemen's Relief and Retirement Fund Trustees of Amarillo*, 456 S.W.2d 434, 438 (Tex.Civ.App.—Amarillo 1970, writ ref'd n.r.e.). Within the class of parents, those accused of vehicular torts are treated differently than those accused of non-vehicular torts. This distinction bears no rational relation to legitimate state interest. There are recognized public policy objectives for parental immunity in actions arising out of the discharge of parental responsibilities "such as the provision of a home, food and schooling". *Shoemake*, 826 S.W.2d at 936. I believe that, as applied in this case, the doctrine of parental immunity denies Katherine Singleton equal protection of the law. The negligent actions alleged arise not only from failing to educate the child in proper motorcycle safety, but also in failing to provide safety equipment. The tort where the parent negligently operates the vehicle and the tort where the parent negligently fails to provide safe equipment for operating a motorcycle can be distinguished only in ways not

expressible as a legitimate state interest. Although in the course of rearing their children parents perform many discretionary acts which may be criticized by others, use of motorcycles by unlicensed minors without safety equipment cannot be said to be an act purely and uniquely within the realm of the family. Because the doctrine of parental immunity conflicts with the Texas Constitution, it should not be applied in this case to bar suit as a matter of law.

As to whether appellants failed as a matter of law to state a cause of action against the individual appellees, a cause of action for negligence consists of: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987).

Duty is a question of law. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). Appellants urge the appellees failed to establish no duty was owed Katherine. Jimmie Martin testified by deposition they purchased a moped for Katherine, they did not have a helmet for her, and Katherine had her express permission to ride the moped that day. Jimmie Martin's affidavit states: "On the day my daughter was injured, I gave her express permission to ride her moped.... [s]he had my implied permission to ride a motorcycle as well, which she was doing on the day of the accident." Katherine's step-father, Brent Martin, argues that in the event parental immunity is not available, he has no duty of care towards Katherine. Brent admitted in his affidavit that he "assumed the care and support of" Katherine. Jimmie Martin's affidavit and deposition aver that she and Brent Martin purchased the moped for her but did not provide a helmet; that Katherine's father, William Singleton, was aware that Katherine had a moped and rode it and other motorcycles without a helmet, told Katherine he never wore a helmet when he rode, and did not instruct her on safe operation of the vehicle. A person of ordinary prudence, having entrusted a motor-driven vehicle to a child, would have a duty to ensure the child had the necessary safety equipment. Each of the appellees were either a parent or a person who had assumed a parental role. *Motsenbocker v. Wyatt*, 369 S.W.2d 319, 324 (Tex.1963), recognized a parental duty of supervision. *Motsenbocker* involved a five-year-old; Katherine was fourteen. The duty exists in either case. Whether that duty was breached by each of the appellees in this case is a question for the jury.

Appellees claim that the fact that Katherine was not wearing a helmet and that no safety gear was provided for her by the appellees is not the proximate cause of the accident. Cause in fact means the act or omission was a substantial factor in bringing about the *injury* without which no harm would have occurred. *Nixon v. Mr. Property Management*, 690 S.W.2d 546 (Tex.1985). It is a particularly apt question for jury determination. *Farley v. MM Cattle Co.*, 529 S.W.2d 751, 756 (Tex.1975). The accident may have occurred even if Katherine was not present at the scene, but appellants have alleged that but for the alleged acts of negligence by the appellees Katherine would not have been on the motorcycle, or she would have been wearing protective headgear. Appellees failed to establish that the alleged acts were not a cause in fact of Katherine's injuries. Appellees also argue that it was not foreseeable that Katherine would be riding the motorcycle involved in the accident. It is not required that the particular accident complained of should have been foreseen; all that is required is that the injury be of such a general character as might reasonably have been anticipated and that the injured party be so situated with relation to the wrongful act that injury might reasonably have been anticipated. *Nixon*, 690 S.W.2d at 550. The affidavits attached to appellants' summary judgment response state that Jimmie Martin knew her daughter was riding a moped that day and knew she did not have a helmet. Martin failed to establish that it was not foreseeable that Katherine might be injured if she rode a moped, or a similar vehicle, without protective gear. *See Brown v. Edwards Transfer Co., Inc*, 764 S.W.2d 220, 224 (Tex.

1988). Brent Martin failed to establish a lack of proximate cause as a matter of law, given that he purchased the moped for Katherine, without a safety helmet, and knew she rode without protective gear. William Singleton also failed to establish a lack of proximate cause as a matter of law, given that he rode with Katherine, told her he never wore a helmet, and did not instruct Katherine to wear protective gear.

The appellees failed to establish that there was no genuine issue of material fact and that they were entitled to judgment as a matter of law. TEX.R.CIV.P. 166a. The trial court erred in granting summary judgment for Jimmie Lynn Martin, Brent Martin, and William Singleton III. Points of error one, two and three should be sustained and the judgment reversed and remanded to the trial court for trial on the merits. Because the majority holds otherwise, I respectfully dissent.