NO.
12-05-00422-CV

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

 

AMY A. MCCULLOUGH,
INDIVIDUALLY 

AND AS ADMINISTRATOR OF
THE       §          APPEAL FROM THE THIRD

ESTATE OF KALEB
MCCULLOUGH,

DECEASED, APPELLANT

 

V.        §          JUDICIAL
DISTRICT COURT OF

 

RICHARD A. GODWIN,
BRANDON M.

STAIRS, AND SHELLIE S.
STAIRS,         §          HENDERSON COUNTY, TEXAS

APPELLEES




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



OPINION

            Amy A.
McCullough, individually and as administrator of the estate of Kaleb
McCullough, deceased, appeals the trial court’s orders granting summary
judgment in favor of Appellees Richard A. Godwin, Brandon M. Stairs, and
Shellie S. Stairs.  McCullough raises
eight issues on appeal.  We affirm.

Background

            While
married, McCullough and Godwin had a son, Kaleb, on November 21, 1995.  McCullough and Godwin divorced in October
1997.  By the final divorce decree,
McCullough and Godwin were named joint managing conservators of Kaleb.  McCullough was awarded possession of Kaleb.








            On
Friday, June 27, 2003, Godwin picked up Kaleb from McCullough to exercise his
visitation rights.  On Sunday, June 29,
2003, Godwin and Kaleb  traveled to the
Stairses’ home for a planned outing on Cedar Creek Lake.  Once at the lake, this group and others
traveled by boat to a place on the water known as “Jet Boat Cove.”  Godwin traveled to Jet Boat Cove in a boat
owned by his friend Kevin Hazelip.  Kaleb
traveled to Jet Boat Cove with the Stairses in their boat.[1]  

            Early
that afternoon, the group, which also included Godwin’s friend Mark Johannesen
and his two minor children, soon arrived at Jet Boat Cove.  The boats were anchored, and Godwin left
Hazelip’s boat and waded over to the Stairses’ boat.  Godwin removed Kaleb from the Stairses’ boat
and took off the flotation vest Kaleb was wearing.

            Kaleb
was permitted to swim and play in the water at Jet Boat Cove along with several
other children present.  Kaleb also
played on the banks of Jet Boat Cove. 
While he played, Godwin and others visited with one another, listened to
music, and consumed alcoholic beverages. 


            The
children congregated near the Stairses’ boat and played on and around an inflatable
water toy[2]
owned by the Stairses.  Kaleb and the
other children were playing a game they called “shark,” where the children
would  place themselves inside the open
portion of the tube while the tube was upside down, i.e., the open portion of
the tube not covered by the nylon cloth was facing down.  At one point, Godwin, who had also used the
tube, instructed Kaleb to stop playing “shark” because Godwin could not see
Kaleb. 

            Approximately
one hour after the time he was last seen by anyone, Shellie Stairs discovered
Kaleb’s body beneath the surface of the water. 
His upper torso had become ensnared between the tube and the nylon cloth
while the tube was upside down.  Although
kept on life support for some time afterwards, Kaleb later died.

            McCullough
filed the instant lawsuit on October 10, 2003 asserting wrongful death and
survival actions, negligence, and gross negligence, and seeking both
compensatory and exemplary damages. 
Subsequently, Godwin and the Stairses each filed motions for summary
judgment.[3]  In his motion, Godwin claimed that McCullough’s
action was barred by the parental immunity doctrine.  By their motion, the Stairses argued that
they had no duty to supervise Kaleb because Godwin was in possession of Kaleb
at all times.  Alternatively, the
Stairses argued that McCullough had no evidence to support that they owed Kaleb
a legal duty. The Stairses further argued that the elements for exemplary
damages did not exist.  McCullough
responded to the defendants’ motions. 
Subsequently, McCullough amended her petition and alleged additional
duties owed by the defendants to Kaleb apart from a duty to supervise.  Ultimately, the trial court granted Godwin’s
and the Stairses’ respective motions for summary judgment.  This appeal followed.

 

Summary
Judgment Standards of Review

            In
reviewing a traditional motion for summary judgment, this court must apply the
standards established in Nixon v. Mr. Property Management Co.,
690 S.W.2d 546, 548-49 (Tex.1985), which are as follows:

 

                1.             The
movant for summary judgment has the burden of showing that there is no genuine 

                                issue
of material fact and that it is entitled to judgment as a matter of law;

                

                2.             In deciding whether there is a
disputed material fact issue precluding summary judgment, evidence favorable to
the non-movant will be taken as true;

                

                3.             Every reasonable inference must be
indulged in favor of the non-movant and any doubts resolved in its favor.

 








See id.; May v. Nacogdoches Mem’l
Hosp., 61 S.W.3d 623, 628 (Tex. App.–Tyler 2001, no pet.).  To prevail on a motion for summary judgment,
a party must conclusively establish the absence of any genuine question of
material fact and that he is entitled to judgment as a matter of law.  Tex.
R. Civ. P. 166a(c).  A movant must
either negate at least one essential element of the nonmovant's cause of action
or prove all essential elements of an affirmative defense.  See Randall's Food Markets, Inc.
v. Johnson, 891 S.W.2d 640, 644 (Tex.1995); see also  MMP, Ltd. v. Jones, 710 S.W.2d
59, 60 (Tex.1986).  Since the burden of
proof is on the movant, and all doubts about the existence of a genuine issue
of material fact are resolved against the movant, we must view the evidence and
its reasonable inferences in the light most favorable to the nonmovant.  See Great Am.  Reserve Ins. Co. v. San Antonio Plumbing
Supply Co., 391 S.W.2d 41, 47 (Tex.1965).  We are not required to ascertain the
credibility of affiants or to determine the weight of evidence in the
affidavits, depositions, exhibits, and other summary judgment proof.   See Gulbenkian v. Penn, 151
Tex. 412, 252 S.W.2d 929, 932 (Tex. 1952). 
The only question is whether or not an issue of material fact is
presented.  See Tex. R. Civ. P. 166a(c).

            Once
the movant has established a right to summary judgment, the nonmovant has the
burden to respond to the motion for summary judgment and present to the trial
court any issues that would preclude summary judgment.  See, e.g., City of Houston v.
Clear Creek Basin Auth., 589 S.W.2d 671, 678–79 (Tex.1979).  All theories in support of or in opposition
to a motion for summary judgment must be presented in writing to the trial
court.  See Tex. R. Civ. P. 166a(c).

            Furthermore,
after adequate time for discovery, a party without presenting summary judgment
evidence may also move for summary judgment on the ground that there is no
evidence of one or more essential elements of a claim or defense on which an
adverse party would have the burden of proof at trial.  Tex.
R. Civ. P. 166a(i).  The motion
must state the elements as to which there is no evidence.  Id.  Once a no evidence
motion has been filed in accordance with Rule 166a(i), the burden shifts to the
nonmovant to bring forth evidence that raises a fact issue on the challenged
evidence.  See Macias v. Fiesta
Mart, Inc., 988 S.W.2d 316, 316–17 (Tex. App.–Houston [14th Dist.]
1999, no pet.).  A no evidence motion is
properly granted if the nonmovant fails to bring forth more than a scintilla of
probative evidence to raise a genuine issue of material fact as to an essential
element of the nonmovant’s claim on which the nonmovant would have the burden
of proof at trial.  See Merrell
Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.1997).  If the evidence supporting a finding rises to
a level that would enable reasonable, fair minded persons to differ in their
conclusions, then more than a scintilla of evidence exists.  See Havner, 953 S.W.2d at
711.  Less than a scintilla of evidence
exists when the evidence is so weak as to do no more than create a mere surmise
or suspicion of a fact, and the legal effect is that there is no evidence. See
Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex.1983).








            On
appeal, we will uphold a no evidence summary judgment only if the summary
judgment record reveals no evidence of the challenged element, i.e., (a) there
is a complete absence of evidence as to the challenged element; (b) the
evidence offered to prove the challenged element is no more than a mere
scintilla; (c) the evidence establishes conclusively the opposite of the
challenged element; or (d) the court is barred by rules of law or of evidence
from giving weight to the only evidence offered to prove the challenged
element.  See Taylor-Made Hose,
Inc. v. Wilkerson, 21 S.W.3d 484, 488 (Tex. App.–San Antonio 2000, pet.
denied) (citing Robert W. Calvert, “No Evidence” and “Insufficient Evidence”
Points of Error, 38 Texas L. Rev.
361, 362-63 (1960)).

 

Claims
Against Godwin

            In
her first, second, third, and eighth issues, McCullough addresses the trial
court’s granting of Godwin’s motion for summary judgment under the parental
immunity doctrine. More specifically, in her first issue, McCullough argues
generally that the trial court erred in granting Godwin’s motion for summary
judgment.[4]  In her second issue, McCullough argues that
the trial court erred in granting Godwin’s motion for summary judgment because
her summary judgment proof raised a fact issue concerning whether Godwin
abandoned and abdicated his parental duty.[5]

Parental Immunity Doctrine 


            Parental
immunity has been adopted in Texas in order to provide parents with a certain
amount of protection from litigation concerning the decisions they make in
their capacity as parents.  See Jilani
v. Jilani, 767 S.W.2d 671, 671-72 (Tex. 1988); Plainview Motels,
Inc. v. Reynolds, 127 S.W.3d 21, 41 (Tex. App.–Tyler 2003, pet.
denied).  The elements of the defense of
parental immunity are as follows:  (1)
the plaintiff is an unemancipated minor; (2) the defendant is the plaintiff’s
parent; (3) the defendant was exercising parental authority or discretion; (4)
the defendant was negligent in exercising the parental authority or discretion;
and (5) the defendant’s negligence caused the plaintiff to suffer personal
injury.  Id. 








            In
holding that certain situations do not amount to an exercise of parental
authority or discretion, Texas courts have specifically held that the doctrine
does not apply (1) when a parent commits a willful, malicious, or intentional
wrong against a child or abandons or abdicates his parental responsibility, (2)
when the act complained of arises outside of a normal family relationship of a
parent to a child, such as a business activity in which the child is the
employee and the parent is the employer, and (3) when damages are caused to the
child by the parent's negligently operating a motor vehicle.  See Reynolds, 127 S.W.3d at
41; Hall v. Martin, 851 S.W.2d 905, 909 (Tex. App.–Beaumont 1993,
writ denied).  On the other hand, parents
have immunity from their child's cause of action for injuries arising out of
essentially parental activities involving issues of (1) supervision, (2)
discipline, (3) provision of a home, (4) provision of food, (5) schooling, (6)
medical care, (7) recreation, and (8) family chores.  See Felderhoff v. Felderhoff,
473 S.W.2d 928, 933 (Tex. 1971); Reynolds, 127 S.W.3d at 41–42; see
also, e.g., Hoffmeyer v. Hoffmeyer, 869 S.W.2d 667, 668 (Tex.
App.–Eastland 1994, writ denied) (parental immunity applied to claim that
parent was negligent in supervising child when parent left loaded gun in the
room); Hall, 851 S.W.2d at 910 (parental immunity applied to
claim that parent was negligent in entrusting a motor scooter to child without
instructions or helmet); Shoemake v. Fogel, Ltd., 826 S.W.2d 933,
938 (Tex. 1992) (parental immunity applied to claim for negligent supervision
of child who drowned).

            In
the instant case, the summary judgment record indicates that (1) seven year old
Kaleb was an unemancipated minor;[6] (2) Godwin was Kaleb’s father; (3)
Godwin was supervising Kaleb during recreation, a parental activity; (4) Godwin
is alleged to have been negligent in his supervision of Kaleb during this
activity; and (5) Godwin’s alleged negligence allegedly contributed to Kaleb’s
death.  The record does not reveal any
evidence to the contrary, nor does McCullough dispute such evidence in her
brief.   

Abandonment and Abdication of
Parental Responsibilities








            McCullough
contends that the trial court erred in granting Godwin’s motion for summary
judgment because her summary judgment proof raised a fact issue concerning
whether Godwin abandoned and abdicated his parental duty.  In support of her contention, McCullough
cites evidence that Godwin was intoxicated in spite of language in the divorce
decree prohibiting the consumption of alcohol during periods of
visitation.  McCullough further cites to
evidence that Godwin did not make any provision for Kaleb’s health and safety
by providing sunscreen, a life vest, or supervision while Kaleb played on the
water toy.  McCullough further asserts
that evidence that Godwin was riding a jet ski during the time in question
supports this exception to the parental immunity doctrine.  However, McCullough cites no authority
supporting that such actions amount to abandonment and abdication of parental
responsibility.  The term “abandon”
generally means to give up absolutely, to forsake entirely, to renounce
utterly, to relinquish all connection with or concern in, or to
desert.  See Railroad Comm’n of
Texas v. Waste Mgmt. of Texas, Inc., 880 S.W.2d 835, 843 (Tex. App.–Austin
1994, no writ); Black's Law Dictionary
2 (6th ed. 1990).  The definition of “abdication”
is similarly absolute.  See Black's Law Dictionary 5 (6th ed.
1990) (a renunciation, quitting, and relinquishing, so as to have nothing
further to do with a thing, or the doing of such actions as are inconsistent
with the holding of it).  In Platt
v. Moore, 183 S.W.2d 682 (Tex. Civ. App.–Amarillo 1944, writ ref’d
w.o.m.), the court noted that the abandonment of a child such as is
contemplated in certain adoption scenarios consists of an absolute
relinquishment of the custody and control of the child and the willful purpose
and intention to relinquish the benefit of the rights to which the parent is
entitled under the law.  Id.
at 684.  Based on our review of the
record in the instant case, we cannot conclude that Godwin’s behavior
constituted such a desertion or abandonment. 
See id.  Considering
the foregoing authority, we hold that the evidence cited by McCullough does not
raise a genuine issue of material fact concerning whether Godwin abandoned and
abdicated his parental duty.  

Malice

            McCullough
further argues that she has pleaded facts and that the summary judgment
evidence will support that Godwin has committed endangerment of a child and
criminally negligent homicide. 
Additionally, McCullough states that the summary judgment evidence also
demonstrates that the negligence and gross negligence of Godwin rise to the
level of malice.  Neither McCullough’s
supplemental response to the defendants’ motions for summary judgment nor her
brief on appeal contain citations to the record where such summary judgment
evidence supporting malicious conduct can be located.  Further, McCullough does not offer any detail
as to what evidence supports her contention that Godwin acted with malice.  As such, by making only general reference to
the summary judgment record in support of this portion of her second issue,
McCullough has waived error, if any.[7]  See Tex.
R. App. P. 38.1(h); Abdelnour v. Mid Nat’l Holdings, Inc.,
190 S.W.3d 237, 241–42 (Tex. App.–Houston [1st Dist.] 2006, no pet.).  McCullough’s second issue is overruled.

Failure to Raise Grounds in Motion
for Summary Judgment

            In
her third issue, McCullough argues that the trial court erred in granting
Godwin’s motion for summary judgment because the motion did not address the
issues concerning abandonment and abdication of his parental duties.  Parental immunity is an affirmative
defense.  See Shoemake, 826
S.W.2d at 937.  As such, Godwin was
entitled to move for summary judgment on such an affirmative defense.  See Tex.
R. Civ. P. 166a(b).  To meet his
burden of proof, Godwin was required to demonstrate that there was no genuine
issue as to any material fact concerning the elements of the parental immunity
doctrine and that he was entitled to judgment as a matter of law.  See  Reynolds, 127 S.W.3d at 41; see
also Tex. R. Civ. P.
166a(c).  The issue of abandonment and
abdication of Godwin’s parental duties is not an element of the parental
immunity doctrine, but rather an exception thereto.  Id.  We hold that Godwin was not required to
preemptively negate exceptions to the parental immunity doctrine.  McCullough’s third issue is overruled.

Constitutionality of Parental
Immunity Doctrine

            In
her eighth issue, McCullough argues that the parental immunity doctrine is
unconstitutional and, therefore, should not be applied.  A statute is presumed to be constitutional
and should not be struck down by an intermediate appellate court except on
clear and certain grounds. See Sax v. Votteler, 648 S.W.2d 661,
664 (Tex. 1983).  “It is to be presumed
that the Legislature has not acted unreasonably or arbitrarily; and a mere
difference of opinion, where reasonable minds could differ, is not a sufficient
basis for striking down legislation as arbitrary or unreasonable.” Smith
v. Davis, 426 S.W.2d 827, 831 (Tex. 1968).  The burden of demonstrating the
unconstitutionality of the statute rests on the parties assailing the
statute.  McCulloch v. Fox &
Jacobs, Inc., 696 S.W.2d 918, 923 (Tex. App.–Dallas 1985, writ ref'd
n.r.e.).

            In
Felderhoff, the appellant argued generally that the parental
immunity doctrine should be completely abrogated because it is out of
date.  See Felderhoff, 473
S.W.2d at 933.  In addressing the
appellant’s contention, the court stated, in pertinent part, as follows:

 

....  We trust that it is not out of date for the
state and its courts to be concerned with the welfare of the family as the most
vital unit in our society.  We recognize
that peace, tranquility and discipline in the home are endowed and inspired by
higher authority than statutory enactments and court decisions.  Harmonious family relationships depend on
filial and parental love and respect which can neither be created nor preserved
by legislatures or courts.  The most we
can do is to prevent the judicial system from being used to disrupt the wide
sphere of reasonable discretion which is necessary in order for parents to
properly exercise their responsibility to provide nurture, care, and discipline
for their children.  These parental
duties, which usually include the provision of a home, food, schooling, family
chores, medical care, and recreation, could be seriously impaired and retarded
if parents were to be held liable to lawsuits by their unemancipated minor
children for unintentional errors or ordinary negligence occurring while in the
discharge of such parental duties and responsibilities.  It is in this sphere of family relations
between parent and child that the rule of immunity from litigation continues to
find justification and validity.

 

Id. 
The
court, thus, declined to abrogate the doctrine. 
Id.  And although
the supreme court did not consider the constitutionality of the parental
immunity doctrine, its analysis was nonetheless instructive as to the doctrine’s
purpose. 

            The
Beaumont court of appeals has considered the question of constitutionality of
the parental immunity doctrine.  In so
doing, the court succinctly concluded that “the question of constitutionality
[of the parental immunity doctrine] is no longer in doubt.”  Hall, 851 S.W.2d at 910.  Having considered the authority upon which
McCullough relies, we adopt the position of our sister court and hold that the
parental immunity doctrine is not unconstitutional.  McCullough’s first and eighth issues are
overruled.

 

Claims Against the Stairses

            McCullough’s fourth, fifth, sixth,
and seventh issues relate to her claims against the Stairses.

Failure to Raise Grounds in Motion
for Summary Judgment

            In
her sixth issue, McCullough argues that the trial court granted summary
judgment in favor of the Stairses on grounds not raised in their motion for
summary judgment.  The trial court cannot
grant a summary judgment on grounds not presented in the motion.  See Johnson v. Brewer & Pritchard,
P.C., 73 S.W.3d 193, 204 (Tex. 2002); De La Garza &
Assoc., P.C. v. Dean & Ongert, 851 S.W.2d 371, 372–73 (Tex. App.–Houston
[1st Dist.] 1993, no writ).  A nonmovant
may amend her pleadings to avoid summary judgment by adding grounds or claims
not raised in the motion for summary judgment. 
See Smith v. Atlantic Richfield Co., 927 S.W.2d 85, 88
(Tex. App.–Houston [1st Dist.] 1996, writ denied).  In such a scenario, a reply brief does not
suffice to rebut a claim added in an amended pleading.  Id.  Rather, in order to enable the trial court to
dispose of the entire case, the movant must amend or supplement his motion for
summary judgment after a petition is amended to address the new ground or
claim.  Id.

            In
the case at hand, the Stairses argued in their traditional motion for summary
judgment that they had no duty of supervision, care, or protection with regard
to Kaleb because Godwin was in possession of Kaleb at all times.  In essence, the Stairses argued that Godwin,
as Kaleb’s father, had superior and superseding duties with regard to
Kaleb.  Thereafter, McCullough timely
filed her second amended petition,[8] in which she alleged that the
Stairses’ owed Kaleb duties in addition to a duty of supervision.  As such, since the Stairses’ traditional
motion failed to specifically address each of the duties that McCullough’s live
pleadings alleged the Stairses owed Kaleb, the trial court could not properly
grant a traditional summary judgment on those grounds.  See Dean & Ongert, 851
S.W.2d  at 372–73.  McCullough’s sixth issue is sustained.[9]

Duty of Care

            In
her fourth, fifth, and seventh issues, McCullough addresses the trial court’s
granting of the Stairses’ motion for summary judgment.[10]


            No
Evidence Motion for Summary Judgment

            In
her second amended petition, McCullough pleads causes of action for wrongful
death, survival, negligence, and gross negligence.  McCullough’s wrongful death and survival
actions require proof of a wrongful act. 
See Tex. Civ. Prac. &
Rem. Code Ann. §§ 71.002, 71.021 (Vernon 1997).  McCullough’s claim of gross negligence
requires proof of an act or omission involving an extreme degree of risk of
which the actor had subjective awareness, but proceeded with conscious
indifference to the rights, safety, or welfare of another.  See Tex.
Civ. Prac. & Rem. Code Ann. § 41.001(11) (Vernon Supp.
2006).  For each of these causes of
action, the facts underlying the elements of “wrongful act” or “act or omission”
pleaded by McCullough are grounded in negligence.  Additionally, McCullough alleged that the
Stairses are liable for simple negligence. 
Thus, the issue of whether there is summary judgment evidence that the
Stairses owed Kaleb a legal duty relates to each of McCullough’s causes of
action.[11]

            To
prove an action for negligence, the plaintiff must establish the defendant had
a legal duty.  See Graff v. Beard,
858 S.W.2d 918, 919 (Tex. 1993).  A duty
is a legal obligation that requires the defendant to conform to a certain
standard of conduct.  See Way v.
Boy Scouts of America, 856 S.W.2d 230, 233 (Tex. App.–Dallas 1993, writ
denied).  Every person has a duty to
exercise reasonable care to avoid a foreseeable risk of injury to others.  Lukasik v. San Antonio Blue Haven
Pools, Inc., 21 S.W.3d 394, 403 (Tex. App.–San Antonio 2000, no
pet.).  The existence of duty is a
question of law for the court to decide from the facts surrounding the
occurrence in question. Greater Houston Transp. Co. v. Phillips,
801 S.W.2d 523, 525 (Tex. 1990); Otis Eng'g Corp. v. Clark, 668
S.W.2d 307, 309 (Tex. 1983).  

            To
determine whether a duty exists under common law, we apply a risk-utility
balancing test.  See Read v. Scott
Fetzer Co., 990 S.W.2d 732, 736 (Tex. 1998).  We consider several interrelated factors
including the risk, foreseeability, and likelihood of injury weighed against
the social utility of the actor's conduct, the magnitude of the burden of
guarding against the injury, and the consequences of placing the burden on the
defendants.  See Bird v.
W.C.W., 868 S.W.2d 767, 769 (Tex. 1994).  When these facts are balanced, the most
important factor to consider is the foreseeability of the risk.  See Texas Home Mgmt. v. Peavy,
89 S.W.3d 30, 36 (Tex. 2002).  The test
for foreseeability is what a person should, under the circumstances, reasonably
anticipate as a consequence of her conduct. 
See Foster v. Denton ISD, 73 S.W.3d 454, 465 (Tex. App.–Fort
Worth 2002, no pet.).  Foreseeability
alone, however, is not enough to create a duty. 
Golden Spread Council v. Akins, 926 S.W.2d 287, 290–91
(Tex. 1996).  Additionally, we consider (1)
whether one party had a superior knowledge of the risk, see Graff,
858 S.W.2d at 920, (2) whether a party had a right to control the conduct of
another, id., (3) whether societal changes require the
recognition of new duties, see Clark, 668 S.W.2d at 310, (4)
whether the creation of a new duty would be in conflict with existing statutory
law, see Thapar v. Zezulka, 994 S.W.2d 635, 639–40 (Tex. 1999),
and (5) whether there are countervailing concerns that would support or hinder
the recognition of a new duty, see Bird, 868 S.W.2d at 769.

             Risk, Foreseeability and Likelihood of Injury

            Anticipation
of consequences is a necessary element in determining whether a particular act
or omission is actionably negligent.  See
Houston Lighting & Power Co. v. Brooks, 161 Tex. 32, 336 S.W.2d
603, 606 (Tex. 1960).  In other words,
though a person’s act or omission may have caused injury or damage, the person
is not to be held responsible or negligent if he or she could not have foreseen
the harmful occurrence or situation.  See
Ortega & Sons v. El Paso Electric Co., 381 S.W.2d 147, 149 (Tex.
App.–El Paso 1964, no writ).  Actual
anticipation is not the test; the test is what one should, under the
circumstances, reasonably anticipate as consequences of his conduct.  Id.  Moreover, foreseeability does not require the
actor to anticipate the specific incident or precise manner of injury, but only
requires that he reasonably anticipate the general character of the
injury.  Lukasik, 21 S.W.3d
at 403–04.

            Here,
the record indicates that the inner tube in question was intended to be ridden
while towed behind a motorboat.  However,
in this instance, it was floating near the Stairses’ boat, which was anchored
in shallow water.  The evidence further
indicates that on the inner tube was imprinted a warning stating, in pertinent
part, that (1) death or serious injury can occur while using the inner tube,
(2) children should be supervised by an adult while using the inner tube, and
(3) the inner tube is not a substitute for an approved personal flotation
device.  The Stairses concede that
certain risks are inherent to boating. 
The record further indicates that the Stairses knew that children were
playing on the inner tube.

            However,
the summary judgment evidence also indicates that the Stairses transported
Kaleb to Jet Boat Cove in their boat, that Godwin traveled to Jet Boat Cove in
another boat, and that upon the group’s arrival at Jet Boat Cove, Godwin
retrieved Kaleb from Stairses’ boat and removed the flotation vest Shellie
Stairs had placed on Kaleb.  The summary
judgment record further reflects that Godwin used the tube and played with
Kaleb on the tube.  There is no evidence
in the summary judgment record indicating that Godwin sought further assistance
from the Stairses in supervising Kaleb after he initially retrieved Kaleb from
their care.  There is further no evidence
in the summary judgment record that either Brandon or Shellie Stairs was aware
that Godwin was not supervising Kaleb.

            A
parent of a child has a duty to care for, control, protect, and reasonably
discipline his child.  See Tex. Fam. Code Ann. § 14.001(a)(2)
(Vernon Supp. 2006).  While not absolute,
a parent’s rights to care, custody, and management of his child are
constitutional in nature and considered a precious fundamental liberty
interest.  See In the Interest of
K.M.B., 91 S.W.3d 18, 23 (Tex. App.–Fort Worth 2002, no pet.); see
also Santosky v. Kramer, 455 U.S. 745, 753–59, 102 S.Ct. 1388, 1395–97,
71 L.Ed.2d 599 (1982).  Such rights and
duties are subject to (1) a court order affecting them, (2) an affidavit
whereby that parent relinquishes his parental rights, and (3) an affidavit by
the parent designating another person or agency to act as managing
conservator.  See Tex. Fam. Code Ann. § 151.001(d)
(Vernon Supp. 2006).  

            Another
exception to a parent’s fundamental right exists at common law.  A person, who through kindness, charity, or
other motive has received a child into his or her family and treats the child
as a member thereof stands in loco parentis as long as the child remains in the
family.  See Schrimpf v.
Settegast, 36 Tex. 296, 302–03 (Tex. 1871).  “In loco parentis” means “in the place of the
parent” and generally refers to a person in the role of a parent who assumes
the obligations incident to the parental relationship, though without the
formality of a legal adoption.  See In
re Martin, 147 S.W.3d 453, 456 (Tex. App.–Beaumont 2003, pet.
denied).  An in loco parentis
relationship typically arises when a parent is unable or unwilling to care for
the child and a nonparent assumes the duties and responsibilities of the
parent.  Id.  

            In
In re Martin, the parents of a child who drowned in a swimming
pool sued the  Martins, who owned the property
on which the swimming pool was located.  Id.
at 455.  The
Martins filed a petition for writ of mandamus after the trial court struck
their third party petition, by which they sought to join as a party to the suit
the child’s uncle, who had been babysitting the child at the time of the
incident. Id.  The court
held that the uncle, who was temporarily supervising the child as a babysitter,
was not considered to be acting in loco parentis.  Id. at 456. 

            In
the case at hand, Godwin, as Kaleb’s father, had a statutory duty to care for,
control, and protect Kaleb.  See Tex. Fam. Code Ann. §
14.001(a)(2).  Although Kaleb was
physically separated from Godwin while traveling to Jet Boat Cove with the
Stairses, upon the group’s arrival at Jet Boat Cove, Godwin took Kaleb from the
Stairses’ boat and removed the life jacket Shellie Stairs had placed on
Kaleb.  There is no evidence of record
indicating that Godwin sought to relinquish his parental rights and duties, or
that the Stairses otherwise acted in loco parentis.  See Tex.
Fam. Code Ann. § 151.001(d); In re Martin, 147 S.W.3d at
456.

            Overall,
the record indicates that the Stairses were aware of a level of risk inherent
to boating.  Further, as the owners of
the inner tube in question, the Stairses should have been aware of the warnings
imprinted on it.  Thus, it reasonably
follows that the Stairses could foresee that injury could occur and children
should be supervised while using their inner tube.  Nonetheless, the record also indicates that
the Stairses were aware that Kaleb’s father was present and had taken Kaleb
from their boat.  There is no evidence
that either Brandon or Shellie Stairs was aware that Godwin was not supervising
Kaleb.  As such, we conclude that the
Stairses could have reasonably relied on the fact that Godwin would adhere to
his fundamental statutory duty of care, custody, and protection with regard to
Kaleb.  Thus, in spite of their knowledge
of the inherent risks of boating and the warnings imprinted on the inner tube,
we hold that a reasonable person under these circumstances would not foresee
that a child, whose parent was present and had a duty of care with regard to
that child, would drown while playing on an inner tube floating in
approximately three feet of water.

            Social
Utility, Magnitude of Burden, and Consequences of Shifting Burden








            We
next consider the social utility of the actor’s conduct, the magnitude of the
burden of guarding against the injury, and the consequences of placing the
burden on the defendants.  See Bird,
868 S.W.2d at 769.  We note that there is
no evidence in the record to support that water recreation is a socially useful
activity.  Nonetheless, we recognize that
recreation generally is socially useful. 
Turning to the issue of burden, in this case supervising a minor child,
we reiterate that such a duty is statutorily imposed on the child’s
parent.  See Tex. Fam. Code Ann. §
14.001(a)(2).  Furthermore, a parent’s
right to care, custody, and management of his child is constitutional in nature
and considered a precious fundamental liberty interest.  See In the Interest of K.M.B.,
91 S.W.3d at 23.  Indeed, a parent’s duty
to supervise his child is significant, and breach of such a duty can
undoubtedly have dire consequences. 
However, the law does not favor shifting this statutorily imposed
responsibility from the parent absent unique circumstances not present in the
case at hand.  See, e.g., Tex. Fam. Code Ann. § 151.001(d); In
re Martin, 147 S.W.3d at 456.

            Other
Factors








            We
further consider (1) whether one party had a superior knowledge of the risk, see
Graff, 858 S.W.2d at 920, (2) whether a party had a right to control
the conduct of another, id., (3) whether societal changes
require the recognition of new duties, see Clark, 668 S.W.2d at
310, (4) whether the creation of a new duty would be in conflict with existing
statutory law, see Thapar, 994 S.W.2d at 639–40, and (5) whether
there are countervailing concerns that would support or hinder the recognition
of a new duty, see Bird, 868 S.W.2d at 769.  In the instant case, two risks were present—the
risk of drowning that exists generally in situations involving minor children
and water play and the risks implicit from the warnings imprinted on the inner
tube.  The record does not indicate
whether Godwin had any knowledge of the warnings on the inner tube.  However, the record reflects that Godwin was
aware there was risk involved with Kaleb swimming underwater by the tube as he
instructed Kaleb to stop playing “shark” because he could not see Kaleb.  Furthermore, the record reflects that Godwin
was aware that Kaleb was not a strong swimmer. 


            As
set forth above, Godwin had the statutory right to control Kaleb’s
conduct.  No exceptions to Godwin’s
rights and duties as Kaleb’s father are supported by the summary judgment
evidence.  Moreover, were we to hold that
the Stairses had a duty of care, custody, control, or protection  with regard to Kaleb, such a duty would
encroach upon the fundamental statutory duties already imposed upon Godwin as
Kaleb’s father.  There is no evidence of
record to assist in our inquiry as to whether societal changes require the
recognition of new duties or whether there are countervailing concerns, apart
from the conflict with already existing statutory duties, that would support or
hinder the recognition of a new duty.  

            Having
considered the aforementioned factors, we conclude that under risk-utility
analysis there was no summary judgment evidence to support that the Stairses
owed Kaleb a legal duty.  As such, we
hold that the trial court did not err in granting the Stairses’ no evidence motion
for summary judgment.  There was no
evidence in the summary judgment record to support the “wrongful act” element
of McCullough’s wrongful death and survival actions, both grounded in
negligence.  Moreover, there was neither
evidence of the act or omission element of her gross negligence action inasmuch
as the underlying act or omission was also grounded in negligence nor the duty
element of her negligence action. 
McCullough’s fourth, fifth, and seventh[12] issues are
overruled.

Disposition

            We have sustained McCullough’s sixth issue.  However, that issue is not dispositive.  Having overruled McCullough’s first, second,
third, fourth, fifth, seventh, and eighth issues, we affirm the
trial court’s judgment.

 

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

 

 

Opinion delivered February 9, 2007.

Panel consisted
of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

(PUBLISH)











[1]
The record reflects that Kaleb wore a life preserver provided by the Stairses
while he traveled to Jet Boat Cove in their boat.





[2] This water toy consisted of an inner tube
approximately the size of a truck tire inner tube and partially covered by a
nylon cloth.  The toy was intended to be
pulled behind a motor boat.  On the toy
was imprinted a warning, which stated, in pertinent part, as follows:

                                

                                DEATH OR SERIOUS
INJURY CAN OCCUR!  .... 
NOT FOR USE BY CHILDREN UNDER SIX (6)                 YEARS
  OF AGE . 
THIS PRODUCT SHOULD NEVER BE USED BY CHILDREN EXCEPT UNDER ADULT           SUPERVISION.  .... 
THIS IS NOT A PERSONAL FLOTATION DEVICE. 
....  ALWAYS WEAR A U.S. COAST GUARD APPROVED TYPE III (PFD) SKI VEST OR AS
RECOMMENDED BY PROPER GOVERNING                AUTHORITIES....





[3] Godwin filed a traditional motion for summary
judgment, while the Stairses filed both traditional and no evidence motions for
summary judgment.  See Tex. R. Civ. P. 166a(a), (i). 





[4]
See, e.g., Malooly Brothers, Inc. v. Napier, 461 S.W.2d 119, 120
(Tex. 1970).





[5]
A more specific explanation of McCullough’s third and eighth issues is set
forth below.





[6] See Tex.
Fam. Code Ann. §§ 31.001(a), 
101.003(a), (Vernon 2002).





[7]
We are unable to refer back to the record citations in McCullough’s statement
of facts absent a modicum of detail concerning the nature of the evidence.





[8]
McCullough’s second amended petition was filed on October 26, 2005.  The hearing on the Stairses’ motion for
summary judgment was held on November 14, 2005.  See Tex. R. Civ. P. 63; Sosa v. Central Power & Light,
909 S.W.2d 893, 895 (Tex. 1995).





[9] As set forth below, McCullough’s allegations
are based in negligence.  In spite of her
amended pleadings, McCullough had the burden to present evidence to overcome
the Stairses’ no evidence motion for summary judgment.  See Tex. R. Civ. P. 166a(i); Macias,
988 S.W.2d at 316–17.    





[10] In her fourth issue, McCullough argues
generally that the trial court erred in granting the Stairses’ motion for
summary judgment.  In her fifth issue,
McCullough argues that the trial court erred in granting the Stairses’ motion
for summary judgment because her summary judgment proof raised a fact issue
concerning whether the Stairses breached a duty they owed a duty Kaleb.  In her seventh issue, McCullough argues that
the trial court erred in granting the Stairses summary judgment because the
summary judgment evidence raised a fact issue on exemplary damages.  





[11]
The additional allegations in McCullough’s second amended petition are based in
negligence.  See, e.g., Prather v.
Brandt, 981 S.W.2d 801, 806 (Tex. App.–Houston [1st Dist.] 1998, pet.
denied) (Section 390 of Restatement Second of Torts applied as negligent
entrustment); Woolridge v. East Tex. Baptist University, 154
S.W.3d 257, 259 (Tex. App.–Texarkana 2005, no pet.) (doctrine of attractive
nuisance based in negligence).





[12] McCullough’s seventh issue relating to exemplary
damages is dependent on her gross negligence action.  See Tex.
Civ. Prac. & Rem. Code Ann § 41.003(a)(3) (Vernon 2006).